Dale M. Cendali (SBN 1969070)
Joshua L. Simmons (*pro hac vice*)
Josh Berlowitz (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
dale.cendali@kirkland.com
joshua.simmons@kirkland.com
josh.berlowitz@kirkland.com

Attorneys for Defendant Apple Inc.

*Additional Counsel Listed on Signature Page*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

TED ENTERTAINMENT, INC., MATT FISHER, and GOLFHOLICS, INC., each individually and on behalf of all other similarly situated,

Plaintiffs,

v.

APPLE INC.,

Defendant.

CASE NO. 3:26-CV-02936-RS

**DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AMENDED COMPLAINT**

Judge: Hon. Richard Seeborg

Amended Complaint Filed: July 14, 2026
Hearing Date: October 1, 2026
Time: 1:30 p.m. Pacific
Courtroom: Courtroom 12, 19th Floor

## TABLE OF CONTENTS

**I. ARGUMENT ..... 2**

A. Plaintiffs' Allegations Concerning Use Controls Are Not Cognizable ..... 2

1. The Alleged Technological Measures Do Not Control Access ..... 3
2. To Be Access Controls, the Technological Measures Must Control Access ..... 6
3. Overlap Between Theoretical Access Controls and Use Controls Is Irrelevant ..... 7
4. No Court Has Rejected Apple's Arguments ..... 8

B. The Purported Technological Measures Do Not "Require" Anything to Access Plaintiffs' Works ..... 9

C. Plaintiffs Fail to Allege Apple Engaged in Circumvention ..... 13

D. Plaintiffs' Demand for Irrelevant Relief Should Be Struck ..... 15

**II. CONCLUSION ..... 15**

## TABLE OF AUTHORITIES[1]

**Page(s)**

**Cases**

*Adobe Systems Inc. v. A & S Elecs., Inc.*,
No. 15 Civ. 2288, 2015 WL 13022288 (N.D. Cal. Aug. 19, 2015)....14

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*,
744 F.3d 595 (9th Cir. 2014) ....6, 11

*Apple Inc. v. Psystar Corp.*,
658 F.3d 1150, 1162 (9th Cir. 2011) ....15

*Apple Inc. v. Psystar Corp.*,
673 F. Supp. 2d 943 (N.D. Cal. 2009) ....15

*Ass'n for Info. Media & Equip. v. Regents of the Univ. of Calif.*,
No. 10 Civ. 9378, 2011 WL 7447148 (C.D. Cal. Oct. 3, 2011) ....8

*Cordova v. Huneault*,
817 F. Supp. 3d 819 (N.D. Cal. 2026) ....9

*CouponCabin LLC v. Savings.com, Inc.*,
No. 16 Civ. 39, 2016 WL 3181826 (N.D. Ind. June 8, 2016)....12, 13

*Dish Network LLC v. World Cable Inc.*,
893 F. Supp. 2d 452 (E.D.N.Y. 2012) ....13

*Disney Enters., Inc. v. VidAngel, Inc.*,
869 F.3d 848 (9th Cir. 2017) .... *passim*

*Edland v. Basin Elec. Power Cooperative*,
No. 21 Civ. 4008, 2021 WL 3080225 (D.S.D. July 21, 2021) ....9

*Hattler v. Ashton*,
No. 16 Civ. 4099, 2017 WL 11634742 (C.D. Cal. Apr. 20, 2017)....8

*Hecox v. Little*,
104 F.4th 1061 (9th Cir. 2024) ....15

*I.M.S. Inquiry Mgmt. Sys. Ltd. v. Berkshire Info. Sys., Inc.*,
307 F. Supp. 2d 521 (S.D.N.Y. 2004)....13

[1] All internal quotation marks and citations have been omitted unless otherwise noted; capitalized terms not defined herein previously were defined in Apple's motion to dismiss. Dkt. 35 (Mot.).

*Justice v. Suno, Inc.*,
No. 25 Civ. 11739, 2026 WL 2445362 (D. Mass. Aug. 20, 2026) .......... 9

*Justice v. Uncharted Labs, Inc.*,
No. 25 Civ. 5026, 2026 WL 1430232 (S.D.N.Y. May 21, 2026) .......... 9

*Lasica v. AOL, Inc.*,
No. 15 Civ. 4230, 2015 WL 12791495 (C.D. Cal. Sept. 3, 2015) .......... 8

*LivePerson, Inc. v. 24/7 Customer, Inc.*,
83 F. Supp. 3d 501 (S.D.N.Y. 2015) .......... 13

*MDY Indus., LLC v. Blizzard Ent., Inc.*,
629 F.3d 928 (9th Cir. 2010) .......... *passim*

*Sony Music Ent. v. Uncharted Labs, Inc.*,
No. 24 Civ. 4777, 2026 WL 1019199 (S.D.N.Y. Apr. 15, 2026) .......... 8, 9

*Ted Ent. Inc. v. Snap Inc.*,
No. 26 Civ. 754, 2026 WL 2435349 (C.D. Cal. Aug. 19, 2026) .......... 5

*Ted Ent. Inc. v. Snap Inc.*,
No. 26 Civ. 754, Dkt. 42 (Motion to Dismiss) at 7 (C.D. Cal. May 11, 2026) .......... 6

*UMG Recordings, Inc. v. Suno, Inc.*,
No. 24 Civ. 11611, 2026 WL 2410184 (D. Mass. Aug. 18, 2026) .......... 9

*Universal City Studios, Inc. v. Corley*,
273 F.3d 429 (2d Cir. 2001) .......... 4, 5, 15

*Universal City Studios, Inc. v. Reimerdes*,
111 F. Supp. 2d 294 (S.D.N.Y. 2000) .......... 4

*Yout, LLC v. Recording Indus. Assoc. of Am., Inc.*,
633 F. Supp. 3d 650 (D. Conn. Sept. 30, 2022) .......... 9

**Statutes**

17 U.S.C. § 1201 .......... *passim*

**Rules**

Fed. R. Civ. P. 12 .......... 15

Plaintiffs' Opposition asks this Court to ignore both the allegations in the FAC and, just as importantly, what it does ***not*** allege. Dkt. 46 (Opp.). Instead of addressing Apple's arguments, Plaintiffs rely on strawmen, technical jargon, and what ***other*** plaintiffs alleged against ***other*** defendants in ***other*** cases. That is improper. Plaintiffs' DMCA claim requires them to allege that Apple circumvented a technological measure that effectively controls access to Plaintiffs' works in the ordinary course of its operation. As explained in Apple's motion to dismiss and not rebutted by the Opposition, the FAC failed to do so for three, independent reasons.

***First***, the Opposition confirms that Plaintiffs' claim for circumvention of access controls does not concern access controls. From its first page, the Opposition admits that "YouTube allows human users to view works." Opp. 1. Plaintiffs therefore concede access, and their claim fails. To distract from this fatal admission, Plaintiffs resort to erecting strawmen. Plaintiffs accuse Apple of allegedly ***downloading*** the works despite measures that might prevent downloading and other uses of the works. Yet, a measure that controls only certain post-access ***uses*** is not an ***access*** control. Plaintiffs next argue that a measure could, theoretically, double as an access control and a use control. But Apple never argued otherwise. Plaintiffs' problem is that none of their allegations describe measures that prevent ***access***: Plaintiffs unambiguously allege that the measures were implemented to "enforce [YouTube's] prohibitions on downloading content." FAC ¶ 39. As a result, Plaintiffs' key case counts against them: *Disney Enterprises, Inc. v. VidAngel, Inc.* concerned DVDs with encryption technology preventing access and all uses, whereas here YouTube's alleged measures allow access and affect (at best) only some uses. *See* 869 F.3d 848, 853 (9th Cir. 2017). Having pleaded themselves out of a claim in this case, Plaintiffs point to other cases in which the plaintiffs did not make similar admissions and the defendants did not raise the same arguments Apple raises here. Those cases say nothing about whether Plaintiffs state a claim here, which they do not.

***Second***, the Opposition confirms that the purported technological measures do not "effectively" control anything, let alone access. Plaintiffs' jargon-filled Opposition confirms that YouTube offers two Internet locations where Plaintiffs' works are accessible: file URLs and page URLs. As the Ninth and Sixth Circuits have confirmed, if Plaintiffs' works are accessible at either one of these locations, any measures allegedly protecting them at the other do not "effectively" control access. Here, the FAC itself alleges that there is no measure preventing access to unencrypted versions of the works at file URLs,

which on its own is fatal to Plaintiffs' claim. Plus, as alleged, the measures do not require anything from users to access works at page URLs, either. The alleged measures therefore do not operate "effectively."

***Third***, Plaintiffs' circumvention claim also fails because Plaintiffs do not allege "circumvention." Plaintiffs allege that they gave Apple access to their works, and that Apple accessed these works as any other YouTube user could. Even on Plaintiffs' own terms, Apple did not break and enter; it (allegedly) walked through an open door. Instead of addressing this critical admission, the Opposition argues that to access works at file URLs—which are outside YouTube's playback environment—Apple needed to overcome measures that allegedly operate (if at all) only within the playback environment. This makes no sense: it is akin to saying someone defeats a lock on a front door by walking through an unlocked back door. The Ninth Circuit already rejected this theory of circumvention. Plaintiffs then contradictorily argue that if Apple did use the playback environment, it complied with the measures. But compliance, like disregard of alleged technological measures, is not circumvention. Plaintiffs must allege lock-picking, but they cannot even allege a lock. The Opposition's shortcomings underscore that Plaintiffs have pleaded themselves out of a claim. Because it is impermissible for Plaintiffs to use their Opposition (or an amendment) to rewrite and retract these allegations, their claim should be dismissed with prejudice.

# I. ARGUMENT

## A. Plaintiffs' Allegations Concerning Use Controls Are Not Cognizable

Plaintiffs cannot run from their essential concession that this case concerns alleged ***use***, not ***access***. Plaintiffs concede that YouTube's Terms of Service "grant license . . . to access content through YouTube's services." Opp. 12. If the Terms "describe and reinforce YouTube's" technological measures as Plaintiffs allege, FAC ¶ 76, this admission should end this case: these technological measures grant access. Plaintiffs' argument that the Terms do not "grant any rights or permissions for a user to ***make use*** of the Content independent of the service," Opp. 12 (emphasis added), is therefore of no moment: § 1201(a) only prohibits circumvention of access controls, not use controls. *See MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 943–44 (9th Cir. 2010).

Plaintiffs' allegations confirm what the Terms concede: YouTube is designed to allow access but limit certain uses, especially downloading. The FAC repeatedly alleges efforts by YouTube to "impede the downloading of audiovisual content from its platform," and accuses Apple of trying to make use of

the content by downloading or scraping it. FAC ¶¶ 11, 86; *see also id.* ¶¶ 1, 6–7, 9, 13–14, 16–18, 38, 68, 82, 99–103, 106, 112–13, 115, 117–18, 120, 123–25, 131, 135–36, 140, 146, 149, 152, 159, 163. When it comes to access, however, the FAC makes critical admissions: YouTube ***grants*** the public a "form of access to a given work," *id.* ¶ 55, and YouTube's Terms of Service even ***require*** that YouTube content creators accept this limitation on their right to control access. *Id.* ¶ 77. Thus, as alleged, YouTube's technological measures do not even purport to control access, only use. Specifically, the Automation Detectors regulate compliance with YouTube's Terms of Service by rate-limiting suspected downloaders in their "continued" access of YouTube's systems. Mot. 8–9. And the Playback Connectors link YouTube's public page URLs for videos viewed in YouTube's playback environment to the separate, also public file URLs for those same works in a manner designed to allow streaming but prohibit downloading. *Id.* at 9–10. Neither the Automation Detectors nor the Playback Connectors control ***access*** to the works themselves at either location, and Plaintiffs' claim therefore should be dismissed.

1. <u>The Alleged Technological Measures Do Not Control Access</u>

The Opposition first argues that—despite all of the FAC's allegations to the contrary—the FAC alleges access controls because the measures control streaming in addition to downloading. Opp. 7. An initial problem with this argument is that it fails to overcome the FAC's allegations that users ***also*** have file-level access to the same works, meaning that even controlled streaming in the playback environment would be insufficient for Plaintiffs to state a claim. Mot. 7; *see also infra* 9. On top of that, Plaintiffs' attempt to retract and recharacterize their allegations only emphasizes the infirmity of their claim:

- As to the rolling cipher, the parties agree that it allegedly scrambles or encrypts (Plaintiffs do not settle on which) file URLs. What Plaintiffs fail to address, however, is ***what*** is being scrambled: the cipher connects YouTube's page URLs and file URLs, Opp. 7–8, but nowhere do Plaintiffs allege that the files themselves (*i.e.*, the works) are scrambled or encrypted, or that someone who enters the playback environment is denied access due to the cipher, or that overcoming the cipher is the only way to access file URLs. *See* Mot. 9. Instead, Plaintiffs revealingly argue the works need not be encrypted at all—implicitly conceding they cannot allege the works are protected. *See* Opp. 10. Plaintiffs' alternative argument that the ***encryption*** connecting file URLs to page URLs

changes, Opp. 7, is not the same as saying the underlying file ***URL*** at which the work is located itself changes; the cipher is a map to the location, not a lock on it. Mot. 9.

- As to the proof-of-origin tokens, Plaintiffs argue that they "condition[] delivery of copyrighted works on proof that the requester is operating within YouTube's authorized playback environment." Opp. 8. But Plaintiffs concede the tokens affect only the ability to "stream" within the playback environment, *id.*, and do not impact the ability to access the files at file URLs. Mot. 10. In other words, Plaintiffs concede the tokens are use controls, not access controls. Elsewhere, the Opposition contends that without "satisfying the 'rolling cipher' or providing proof-of-origin tokens, a user is denied any ability to stream a video." Opp. 3, 7–8. This argument as to two of the five technological measures is a tacit admission that the other three do ***not*** affect the ability to stream Plaintiffs' works, and again does not address access to the unprotected files at file URLs.
- As to the other three measures, Plaintiffs lump them together and suggest they work "similarly" to the previous two (which work differently from each other) because they "block a user from watching—or from any other access—to the audiovisual works." Opp. 8. Yet, Plaintiffs fail to dispute that these measures function only in the playback environment, and have no effect on access to the underlying work at the file level—thus conceding that the "back door" to accessing these works is left wide open. Mot. 8–9, 11. At best, these measures leave at least one avenue to access the works wide open: unlocked, unencrypted, and altogether unprotected. Even when applied to the playback environment, they do not prevent access; they only work to ensure that the playback environment is able to deliver streams while preventing downloading. The measures therefore are all use controls that fall outside the scope of § 1201(a). *MDY*, 629 F.3d at 952–53.

Plaintiffs also seek to rely on *VidAngel* and *Snap*, but that reliance is misplaced. Plaintiffs are wrong that their DVD analogy based on *VidAngel* counsels in their favor. Opp. 9–10. CSS-protected DVDs require a user to apply three different types of technological keys to access the works they contained. *See Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 317–18 (S.D.N.Y. 2000), *aff'd sub nom. Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 437 (2d Cir. 2001); *see also VidAngel*, 869 F.3d at 853 (plaintiffs used CSS "to control access to their copyrighted content on DVDs"). These keys are embedded in authorized DVD players, which decrypt DVD contents once a user loads a DVD

into one of them. *See Corley*, 273 F.3d at 437. Thus, possessing a DVD does not allow access to the works contained on it unless a user also engages with the CSS encryption measure. *VidAngel*, 869 F.3d at 853. In *VidAngel*, the defendant accordingly conceded that decryption was required even to view works on a DVD and instead argued that owners "permit[ted] those who buy discs to decrypt to view." *Id.* at 863–64. The defendant then argued that this "conditional access control[]" was really a "use control[]" because plaintiffs objected only to use, not viewing. *Id.* at 864. The Ninth Circuit rejected this argument, holding that because decryption was required even to "watch" videos contained on DVDs, the relevant technological measure qualified as both an access control and a use control. *Id.* at 864–65.

The allegations here could not differ more from *VidAngel*. Citing nothing in the FAC, Plaintiffs argue that "decrypting" the rolling cipher allows a user to "gain[] access to the webpage where the video playback occurs." Opp. 9. Not so: Plaintiffs specifically allege the cipher affects file URLs, ***not*** page URLs "where the video playback occurs." FAC ¶ 59. Regardless, if Plaintiffs now are correct that the cipher instead affects page URLs contrary to their allegations, then the cipher does not restrict access to file URLs, where the files (*i.e.*, works) remain unprotected. Mot. 7, 19. Taken on its own merits, Plaintiffs' latest description of the rolling cipher makes clear that its alleged functionality is the opposite of how a DVD works: with a DVD, a user has access to the place where the content is stored (the disc), but lacks access to the content itself (which is encrypted). Here, a user has access to the content itself (which is unencrypted) assuming they know the location where it is stored (*i.e.*, the file URL). This alleged measure therefore falls squarely ***outside*** *VidAngel*'s ambit.

As to *Ted Entertainment Inc. v. Snap Inc.*, Plaintiffs are wrong that it involved the "same arguments" Apple raises. Opp. 8. In denying Snap's motion to dismiss, the Central District of California held that the alleged technological measures "condition access to the videos on use of YouTube's authorized streaming architecture and satisfaction of the technological requirements embedded within that process." No. 26 Civ. 754, 2026 WL 2435349, at *5 (C.D. Cal. Aug. 19, 2026). Yet, the FAC here alleges that the technological measures ***have no effect*** on users who "operate outside [YouTube's playback] environment" (as Plaintiffs allege Apple did) because they only serve to prevent downloading within that environment. *E.g.*, FAC ¶¶ 58, 61, 65, 71, 101–02, 105, 115, 117. As the opinion did not address that critical distinction, it is not persuasive as to Apple's argument. Moreover, Snap merely contrasted access

controls with copy controls. *See Ted Ent. Inc. v. Snap Inc.*, No. 26 Civ. 754, Dkt. 42 (Motion to Dismiss) at 7 (C.D. Cal. May 11, 2026). But the Ninth Circuit actually instructs that any form of use, not just copying, falls outside § 1201(a)'s ambit. *VidAngel*, 869 F.3d at 863. The difference is more than semantic: it clarifies that § 1201(a) applies only to those measures that "prevent access to the plain text of the work," pushing measures designed to do anything more than that into § 1201(b). *See MDY*, 629 F.3d at 947.[2] Plaintiffs therefore have pleaded themselves out of a claim, and they cannot walk it back now. *See Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) ("A party cannot amend pleadings to directly contradic[t] an earlier assertion made in the same proceeding.").

2. <u>To Be Access Controls, the Technological Measures Must Control Access</u>

Plaintiffs also are wrong to argue that "access" controlled pursuant to § 1201(a) must mean the "freedom or ability to obtain or make use of something." Opp. 10 (citing an out-of-Circuit district court opinion and a dictionary). They say that, if the technological measure limits the ability to obtain (*i.e.*, reproduce) audiovisual files, it is an access control. *Id.* at 10, 12 (arguing that § 1201(a) encompasses measures that "prevent[] users from accessing and downloading the underlying video file, even if they could otherwise *view* the work by streaming it"). By doing so, they ignore the Ninth Circuit's clear admonition that § 1201(a) and § 1201(b) "create two distinct types of claims." *See MDY*, 629 F.3d at 944. Section 1201(b) does ***not*** prohibit ***circumvention*** of use controls, only ***trafficking*** in technologies designed to facilitate circumvention of use controls. *Id.* at 945. To define "access" as broadly as Plaintiffs suggest would collapse § 1201(a) and § 1201(b) and create liability that Congress intentionally omitted: a measure that prevents ***any*** use would control both "access to a work" (defined by Plaintiffs as to "make use" of a work) and all the "right[s] of a copyright owner" under the Copyright Act, each of which relates to a form of making use of a work. *Id.* at 944–45. As Plaintiffs' reading of "access" would swallow "use," it is incorrect and inconsistent with the Ninth Circuit's binding precedent.

Plaintiffs' misreading of *MDY* also leads them to the incorrect conclusion that an access control need not "prevent" access, only "control" it. Opp. 11. In *MDY*, the Ninth Circuit specifically discussed § 1201(a) as relating to "circumvention of technologies designed to ***prevent*** access to a work." *See* 629

[2] Snap also conceded allegations of circumvention, which Apple contests. *Contrast Snap*, Dkt. 42 at 22, *with infra* 13. And Snap took no issue with the improper relief Plaintiffs pleaded as Apple does. *See infra* 14.

F.3d at 944 (emphasis added). That an access measure need not be "circumvention-proof," Opp. 11, does not mean that it can simply channel access in a particular direction: it must serve to ***prevent*** access in all directions unless complied with. Here, Plaintiffs do not allege that any technological measures employed by YouTube prevent access; at best, they limit downloading when works are accessed in a certain way. *E.g.*, FAC ¶¶ 39, 86; *see also* Mot. 13–14. But Plaintiffs cannot overcome that the works still can be accessed regardless of these alleged measures.

Evidently recognizing that their construction is inconsistent with the Ninth Circuit's, Plaintiffs try to walk back their concession that the ***works*** are accessible in multiple locations. Now, they focus on the Copyright Act's differentiation of works and copies to argue that ***copies*** accessible in multiple places can be protected differently. Opp. 10–11. This is a red herring: the DMCA is clear that it applies to measures designed to protect access to ***works***, not ***copies***. *See* § 1201(a)(1)(A). And because Plaintiffs conceded that the works, files, and videos all refer to the same thing, access to one is access to all. Mot. 15 & n.7. Plaintiffs cannot now distinguish the videos and files after previously admitting they are the same. That means Plaintiffs' concession that their "works can be streamed" necessarily means (contrary to Plaintiffs' argument, *see* Opp. 11) that the works "are freely accessible" on YouTube notwithstanding any technological measures and regardless of the availability of other copies of the works in other locations.

Finally, although Plaintiffs argue that YouTube's Terms of Service deny users the right to "make use" of works, Opp. 12 (citing FAC ¶ 77), they omit that these same Terms of Service grant users the right to "access" them. Mot. 6 (quoting FAC ¶ 77). This distinction is fatal. It disproves Plaintiffs' misconstruction of § 1201(a), and it confirms that the measures do not even intend to prevent access.

3. <u>Overlap Between Theoretical Access Controls and Use Controls Is Irrelevant</u>

Plaintiffs next argue that measures ***can*** be both access and use controls, devoting four pages to this argument without citing the FAC once. Yet, Apple never disputed that theoretical possibility. *Contrast* Opp. 12–15, *with* Mot. 12–16 (citing 19 paragraphs of the FAC to explain why the alleged use controls ***here*** are not access controls). Although there can be overlap between access controls and use controls, *see* Mot. 15 n.8, circumvention of access controls and use controls remain "two distinct types of claims." *MDY*, 629 F.3d at 944. Thus, the question is whether the technological measures at issue are access controls. They are not because they "would have to ***first*** control access (e.g., by encrypting the work),

***and then*** also limit potential uses after access (e.g., by allowing viewing but not downloading)." Mot. 15 n.8 (citing *VidAngel*, 869 F.3d at 864–65). Plaintiffs' shifts between whether any of the technological measures protect page URLs, file URLs, the playback environment, or the files themselves only emphasizes the implausibility that the measures protect any of them.

Instead, Plaintiffs devote their energy to distinguishing cases based on insubstantial points. They argue, for example, that *Hattler v. Ashton* is no longer good law because it "predates *VidAngel*" and is "premised on the view that a rightsholder relinquishes all Section 1201(a) protection when she allows a person to view her work." Opp. 13–14 (discussing No. 16 Civ. 4099, 2017 WL 11634742 (C.D. Cal. Apr. 20, 2017)). But *VidAngel* did not abrogate this proposition, which follows (as the *Hattler* court noted) from the Ninth Circuit's reasoning in *MDY* as well as the Sixth Circuit's reasoning in *Lexmark*. Instead, *VidAngel* held, as *MDY* had before it, that a measure can restrict both access and use of a copyrighted work. *VidAngel*, 869 F.3d at 865; *see also MDY*, 629 F.3d at 946. The problem for Plaintiffs is that this is not the situation here.[3] Plaintiffs cannot get past their fundamental concession that the alleged technological measures aim to limit downloading by users of YouTube's playback environment; they do not affect file-level access at public file URLs.

4. No Court Has Rejected Apple's Arguments

Plaintiffs cite to courts in different cases that rejected different arguments about YouTube's alleged measures, Opp. 15–16, but that does not change the merits of ***this*** case. As explained above, *VidAngel* is distinguishable on the facts and supports Apple on the law, and *Snap* involved different arguments. *Supra* 4. Plaintiffs' cites to *Uncharted Labs* and *Cordova* fare no better. *Sony Music Entertainment v. Uncharted Labs, Inc.* considered only one of the five alleged measures here (the rolling cipher) and held in a single

[3] Plaintiffs further try to distinguish *Lasica v. AOL, Inc.* and *Ass'n for Info. Media & Equip. v. Regents of the Univ. of Calif.* to equally limited success. Plaintiffs argue *Lasica*, for example, concerned only a failure to allege technological measures and reliance on a terms of service agreement. Opp. 14. Yet, the court was clear that allegations of "lawful access" doom any § 1201 claim "[i]n addition" to the failure to allege technological measures. No. 15 Civ. 4230, 2015 WL 12791495, at *5 (C.D. Cal. Sept. 3, 2015). Here, Plaintiffs allege public access, similarly dooming their claim. *E.g.*, FAC ¶¶ 2–3, 77. And Plaintiffs' attempt to distinguish *Regents* mischaracterizes Apple's argument entirely. As discussed above, Apple does not argue that "because it had one form of authorized access to Plaintiffs' works (the ability to view them on YouTube), it could not run afoul of any provision of Section 1201." Opp. 14 (citing No. 10 Civ. 9378, 2011 WL 7447148, at *9 (C.D. Cal. Oct. 3, 2011)). Instead, Apple argues that it had two forms of authorized access, including both the ability to view videos on YouTube and the ability to access those videos at their public file URLs. Apple does not argue it was authorized to decrypt Plaintiffs' videos because there was no need to decrypt them at all.

sentence that it ***might*** qualify as an access control based on the particular allegations. No. 24 Civ. 4777, 2026 WL 1019199, at *3 (S.D.N.Y. Apr. 15, 2026). That has no bearing on most of the arguments or allegations here. ***These*** Plaintiffs alleged that the Playback Connectors all connect page URLs and file URLs within YouTube's playback environment, and no more. Mot. 9. Plaintiffs concede the videos are accessible in both places. *MDY* precludes a claim based on these allegations. *See MDY*, 629 F.3d at 953. *Cordova v. Huneault*, meanwhile, ***did*** involve "rolling-cipher technology designed to prevent unauthorized downloading," contrary to Plaintiffs' current assertion that it did not. *Contrast* 817 F. Supp. 3d 819, 834 (N.D. Cal. 2026), *with* Opp. 16. And there is no basis to apply here any holding as to restricted "access to downloadable files[]," Opp. 16, because Plaintiffs fail to allege that the downloadable files are restricted. *Supra* 6. In short, this Court must consider Plaintiffs' allegations and Apple's arguments on their own merits, not defer to Plaintiffs' *ipse dixit* about other courts' resolutions of other issues.[4] And Plaintiffs' allegations fail to state a § 1201(a) claim.

### B. The Purported Technological Measures Do Not "Require" Anything to Access Plaintiffs' Works

The FAC also fails to state a claim for the additional, independent reason that the purported technological measures do not operate "effectively." Section 1201(a) demands a qualifying technological measure must "require[] the application of information, or a process or a treatment" to access the allegedly

---

[4] Tellingly, Plaintiffs devote only a single string cite, without even any parenthetical explanations, to their claim that other courts have supposedly rejected Apple's arguments. Opp. 2 n.1. That is because the courts did ***not*** reckon with Apple's arguments, which are particular to Plaintiffs' admissions in the FAC. *UMG Recordings, Inc. v. Suno, Inc.* considered whether the rolling cipher was a use control (only one of the FAC's issues), but based only on those plaintiffs' limited allegations, which did not make it susceptible to a determination on a motion to dismiss. No. 24 Civ. 11611, 2026 WL 2410184, at *2, 5 (D. Mass. Aug. 18, 2026). *Justice v. Suno, Inc.* adopted *UMG*'s conclusion without elaboration. No. 25 Civ. 11739, 2026 WL 2445362, at *4 & n.2 (D. Mass. Aug. 20, 2026). *Justice v. Uncharted Labs, Inc.* similarly adopted *Sony*'s conclusion without elaboration, again only as to whether the technological measure was a use control based on those plaintiffs' limited allegations. No. 25 Civ. 5026, 2026 WL 1430232, at *3 (S.D.N.Y. May 21, 2026). *Edland v. Basin Elec. Power Cooperative* involved using a "mobile phone to record the Videos as they played on a computer streaming the Videos on YouTube," which is a far cry from the allegations that Apple accessed unprotected files at publicly accessible file URLs. No. 21 Civ. 4008, 2021 WL 3080225, at *6 (D.S.D. July 21, 2021); *contrast infra* 13 (discussing Plaintiffs' failure to allege circumvention). Finally, *Yout, LLC v. Recording Industry Association of America, Inc.* was a declaratory judgment action in which the alleged circumventer pleaded itself out of a claim based on the court's reading of "vague" allegations about YouTube's technology, which included descriptions of purported "request URL[s]." 633 F. Supp. 3d 650, 667 (D. Conn. Sept. 30, 2022). That differs from this case, in which Plaintiffs allege in detail measures that do not control access at either file URLs or page URLs. None of these out-of-Circuit cases bears on Plaintiffs' unique admissions or Apple's numerous arguments.

protected works in the ordinary course. Because encountering the technological measures must be "require[d]," measures fall outside § 1201(a) where they "restrict[] one form of access but leave[] another route wide open." *MDY*, 629 F.3d at 953 (quoting *Lexmark Int'l v. Static Control Components*, 387 F.3d 522, 547 (6th Cir. 2004)). Applying this "front door/back door" principle, the Ninth Circuit held that a purported technological measure did not qualify under § 1201(a) where it prevented access to works "while connected to a [] server" but left "open the ability to access these elements directly via the user's computer." *Id.* at 953–54. Again, the DVD example is instructive: with a DVD, a person ***must*** confront the technological measure; there is no other way to gain access to the content. *See VidAngel*, 869 F.3d at 853. Here, by contrast, the FAC runs headlong into the Ninth Circuit's front door/back door problem.

By Plaintiffs' own allegations, YouTube offers two ways of accessing the works over the Internet: at file URLs and page URLs. A user can "scrap[e]" the works as files at their file URLs notwithstanding anything the alleged technological measures purport to do. *E.g.*, FAC ¶ 101; *see also id.* ¶ 106 (alleging a user is able to retrieve "the underlying video and audio file[] directly from YouTube's servers" without decrypting or descrambling). Because all these measures "leave[] open the ability to access" Plaintiffs' works at file URLs, they do not "effectively control access." *MDY*, 629 F.3d at 953–54. This alone defeats Plaintiffs' claim.

As to page URLs, a user need not apply any information or process to the measures. Per the FAC, the Automation Detectors affect only some "***ab***normal" circumstances. FAC ¶¶ 61, 69 (emphasis added). They do not operate in the "ordinary course" to "require[]" anything to "gain access" to the works at issue. *See* § 1201(a)(3)(B). Moreover, Plaintiffs allege that the Automation Detectors, ***even when triggered***, only "typically" (***not*** always) require a process. But "typically" is not enough to satisfy § 1201(a); the process or treatment must be "require[d]." As to the Playback Connectors, these ensure only that data is delivered from file URL to page URL, enabling YouTube's playback environment to function as designed: allowing access, but limiting certain uses (specifically, downloading). *See* FAC ¶¶ 59, 65, 71. The Playback Connectors therefore both have no effect on file URLs and do not require a process or treatment at page URLs; they therefore fall outside § 1201(a)'s scope.

Plaintiffs' counterarguments again fail. ***First***, Plaintiffs wrongly assert that Apple argues that "conditional" access controls (which allegedly "allow[] users to view works through an authorized

mechanism, but prevent[] . . . accessing the work in other ways") are "categorically excluded from [§] 1201(a)." *See* Opp. 1–2 (quoting *VidAngel*, 869 F.3d at 864). Not so. Apple argued—in accordance with Ninth Circuit precedent—that § 1201(a) excludes technological measures that "restrict[] one form of access but leave[] another route wide open." *MDY*, 629 F.3d at 953. The question therefore is not what restrictions are placed on ***one*** form of access; it is whether another form of access is restricted at all.

***Second***, Plaintiffs incorrectly apply the Ninth Circuit's holdings in *MDY* and *VidAngel*. Opp. 17–18 & n.5. As discussed above, *VidAngel* concerned DVDs, which have only one way to access the works contained on them: a person ***must*** confront CSS to access the works; there is no other way. *Supra* 4; *see also* Mot. 17. *MDY*, by contrast, involved a front door/back door situation: even though Warden protected some server-based elements, other elements were accessible without using that protected server, and the Ninth Circuit held Warden was ineffective as to those elements. The Ninth Circuit did not consider whether players ordinarily ***do*** access these elements directly on their computers; only whether they ***could*** access them there. This case is analogous to *MDY*, not *VidAngel*, because Plaintiffs concede that the complete works are accessible and unprotected at the "back door" file URLs. Plaintiffs seek to distract the Court by claiming that the alleged technological measures must be encountered "in the ordinary course of viewing videos on YouTube." Opp. 17–18 n.5. *MDY* holds otherwise. *MDY*, 629 F.3d at 953. Plus, "on YouTube" means at the "front door" page URLs: even assuming the measures must be encountered in the playback environment, that still says nothing about access at the file URL. Regardless of whether § 1201(a) requires "affirmative user input," *see* Opp. 17, it plainly "require[s]" ***something***. That YouTube may have locked a front door therefore is insufficient where the back door is unlocked.[5]

***Third***, Plaintiffs include a lengthy discussion of the Automation Detectors that still does not show either "door" is locked. Opp. 19–21. Plaintiffs' explanation of the Automation Detectors (which includes a concession that they apply only at page URLs ("YouTube's platform," Opp. 19)) relies on an analogy that proves that even YouTube's "front door" page URLs are unlocked. Plaintiffs analogize that a "burglar

[5] Plaintiffs' attempt to shoehorn their allegations, at least as to the rolling cipher, into a DVD analogy fails, because contradicting allegations are implausible. *Cf. Airs Aromatics*, 744 F.3d at 600 ("A party cannot amend pleadings to directly contradic[t] an earlier assertion."). Plaintiffs assert that the "Amended Complaint does not allege an open, available file." Opp. 18. But that is ***exactly*** what is alleged: at the file URL, a user can retrieve "the underlying video and audio file[] directly from YouTube's servers" without decrypting or descrambling anything. FAC ¶ 106.

alarm operates in the ordinary course even when it stays silent for the homeowner." Opp. 20. But Plaintiffs offer no support for the misguided notion that burglar alarms function in this manner, and indeed it would make little sense for an alarm to wait to scan an intruder before triggering: the normal course would be for a homeowner to have the code to disable it. A burglar alarm that allows a burglar inside cannot be said to "prevent" gaining access in the first instance. *See MDY*, 629 F.3d at 947. True, *MDY* held that a measure with two components, one that "attempt[s] to block initial access" and a "secondary check" to revoke access, could qualify as an access measure. *Id.* at 943. But *MDY* does not hold that the "secondary check" ***alone*** suffices: it would be an ineffective burglar alarm that sets off minutes or months after access already is gained, and havoc already wreaked. Plaintiffs' analogy thus does not help them.

***Fourth***, Plaintiffs argue that other forms of CAPTCHA might qualify as "effective" technological measures, Opp. 20–21, but that does not lead to the conclusion that YouTube's CAPTCHA does as well. Plaintiffs claim that *Reddit v. SerpApi* is "particularly on point." Opp. 21. Yet, there, the alleged technological measure ("SearchGuard") "works by 'examin[ing] each [Google] search query to determine'" its source, and "'sends a challenge or CAPTCHA'" to unrecognized sources. *Id.* (quoting *Reddit v. SerpApi*, No. 25 Civ. 8736, 2026 WL 2210094, at *3, *16 (S.D.N.Y. July 31, 2026)). SearchGuard thus acted as a "gate." Opp. 21. But it does not follow from this that, as Plaintiffs assert, "[t]he same is true of YouTube's CAPTCHA and IP blocking measures," *id.*, because YouTube's measures cannot be considered effective gates when they by design let all users pass through in the first instance. *See* Mot. 23 (quoting FAC ¶ 61). Plaintiffs concede that YouTube's alleged measures do ***not*** scan each user proactively or affirmatively; instead, they allow all users access to YouTube videos and only later monitor for "abnormal" activity. Mot. 18 (quoting FAC ¶ 61). Thus, to read *Reddit* consistently with *MDY*, secondary checks may supplement and make more effective other primary checks, but they do not suffice on their own to meet § 1201(a)'s definition of effectively controlling access.

***Finally***, Plaintiffs chastise Apple for citing out-of-Circuit authority, Opp. 21, but they rely on it extensively—including on the same page of their brief. *Id.* Moreover, Plaintiffs are wrong to say Apple's authority is inapposite. As Plaintiffs acknowledge, the plaintiff in *CouponCabin LLC v. Savings.com, Inc.* alleged a purported technological measure that "block[ed] traffic 'from certain . . . service providers identified as being used particularly heavily by the Defendants to conduct scraping activities.'" Opp. 21

(quoting No. 16 Civ. 39, 2016 WL 3181826, at *1, 3 (N.D. Ind. June 8, 2016)). "In response, the defendants simply switched to other servers that hadn't been blocked." Opp. 21. The court held the alleged technological measure was "plainly ineffective." *Id.* at 22. Plaintiffs' allegations as to the Automation Detectors are indistinguishable from those held insufficient in *CouponCabin*: they allege that certain of the technological measures attempt to block or interpose barriers for certain IP addresses, but by simply using a different IP address, the system will just grant a user access exactly as intended. Mot. 22–23 (discussing FAC ¶¶ 110–11). Just as in *CouponCabin*, the Automation Detectors do not suffice: they need not be encountered, and do not actually impose any barrier.

In short, none of the alleged technological measures here need be encountered to access the works in either location at which Plaintiffs have made them available. They therefore do not "effectively control access" to Plaintiffs' works, and are not covered by § 1201(a). *See MDY*, 629 F.3d at 953–54.

**C. Plaintiffs Fail to Allege Apple Engaged in Circumvention**

Plaintiffs' claim further fails for the third independent reason that the FAC does not include allegations of circumvention. Section 1201(a) defines circumvention to include affirmative acts that "disable[]" or "void[]" a technological measure. *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 509 (S.D.N.Y. 2015). That means that a person must do more than simply ignore, disregard, or comply with a technological measure: alleged circumvention requires confronting a "technological measure *qua* technological measure," and overcoming it. *Dish Network LLC v. World Cable Inc.*, 893 F. Supp. 2d 452, 465 (E.D.N.Y. 2012); *I.M.S. Inquiry Mgmt. Sys. Ltd. v. Berkshire Info. Sys., Inc.*, 307 F. Supp. 2d 521, 532 (S.D.N.Y. 2004). Neither using a "back door" nor avoiding "permission" qualifies. *MDY*, 629 F.3d at 952–53; *World Cable*, 893 F. Supp. 2d at 465.

But disregard or compliance is all Plaintiffs allege. The Opposition argues that the FAC "alleges that Apple defeated YouTube's TPMs through tools and other measures ***to obtain the underlying files***." Opp. 22 (emphasis added). Alleging that Apple ***obtained*** the files does not establish that Apple ***circumvented*** a technological measure to do so. Nor can Plaintiffs bridge the gap by relying on scale. *E.g.*, Opp. 8. Their allegation that "[b]ulk extraction of YouTube videos at the scale alleged here" necessarily implicated YouTube's technological measures, FAC ¶ 100, does not plausibly allege that Apple actually encountered and circumvented any such measure. Indeed, and in contradiction to this

scale-based argument, the FAC asserts that these files are available at file URLs, separate from the page URLs at which a user would experience YouTube's playback environment and be subject to any scale-based effects. *See* Mot. 7 & n.3. That means any technological measure that operates solely within YouTube's playback environment—which, of course, is all of the measures Plaintiffs allege—was irrelevant to Apple's operations. Plaintiffs cannot claim Apple "circumvented" a front door by using a back door. *See MDY*, 629 F.3d at 952–53.

Moreover, Plaintiffs do not allege acts of circumvention regarding the playback environment. As to the Automation Detectors, Plaintiffs allege that these measures validated Apple's credentials exactly as designed. FAC ¶¶ 110–11. Similarly, Plaintiffs allege repeatedly that Apple "circumvented" the Playback Connectors by relying on valid links and credentials. *Id.* ¶¶ 105, 115, 117. "Such conduct . . . is not covered by the DMCA," regardless of whether, as Plaintiffs now argue, Apple "extracted, replicated, and repurposed" these credentials. *See* Opp. 23; *contrast Adobe Systems Inc. v. A & S Elecs., Inc.*, No. 15 Civ. 2288, 2015 WL 13022288, at *8 (N.D. Cal. Aug. 19, 2015) (collecting cases holding use of valid keys by an unauthorized person is not "circumvention" under DMCA).

In response, Plaintiffs again try to rewrite their allegations. As to Automation Detectors, Plaintiffs ask the Court to rely on their *ipse dixit* allegation that "[r]otating IP addresses is not passive disregard of a technological measure," Opp. 22–23, ***even though*** it meant that YouTube validated Apple like it would any other user. FAC ¶¶ 110–11. This argument both conflicts with Plaintiffs' allegations that Apple ignored the playback environment entirely and also would expand the DMCA's strict liability regime into uncharted waters. If complying with a technological measure could qualify as circumvention, any YouTube user could be subject to harassing DMCA suits. As to the Playback Connectors, which again affect only the playback environment, Plaintiffs have pleaded themselves out of a claim twice over. First, they allege that Apple operated outside the playback environment entirely, then they allege that Apple used valid credentials and valid links to reach underlying files. *See* Mot. 24. Plaintiffs' DVD analogy again proves them wrong: unlike in *VidAngel*, the issue is not the use of alternative, unauthorized descrambling tools; it is whether descrambling tools were necessary in the first place. Contrary to Plaintiffs' briefing, Plaintiffs' FAC alleges they were not.

Finally, Plaintiffs' attempt to distinguish case law on unauthorized use of valid access credentials

runs headlong into their own allegations. They allege that "[e]very request for audiovisual file data must present valid, unexpired, cryptographically signed parameters ***generated through YouTube's authorized processes***." FAC ¶ 59 (emphasis added). Yet, by default, YouTube's "gate" is always up in the first instance and generates those valid parameters—it comes down ***only*** if "thresholds are exceeded." FAC ¶ 62. And Plaintiffs do not allege YouTube disables or invalidates these parameters when the gate comes down. In light of the FAC's own allegations, the only plausible inference to draw is that any content obtained by Apple was sent to unblocked IP addresses by YouTube in response to "valid, unexpired, cryptographically signed parameters generated through YouTube's authorized processes." FAC ¶ 59.

Faced with the stark reality that they lack any allegations of circumvention, Plaintiffs ask this Court to nevertheless let them proceed into discovery. But Plaintiffs have not raised a "factual question," *see* Opp. 24, because their theory of the case is not actionable as pleaded. The claim should be dismissed.

### D. Plaintiffs' Demand for Irrelevant Relief Should Be Struck

If the FAC survives despite these fatal flaws, relief from infringement should be struck under Rule 12(f). "[I]njunctive relief must be tailored to remedy the specific harm alleged." *Hecox v. Little*, 104 F.4th 1061, 1089 (9th Cir. 2024). Because the DMCA does not concern itself with use after circumvention, *see Corley*, 273 F.3d at 443, injunctions related to use—including for impoundment of "infringing" material, as Plaintiffs demand—are improper. To enter that injunction, the Court would have to find infringement, which is "distinct" from Plaintiffs' § 1201(a) claim. *See MDY*, 629 F.3d at 950. Plaintiffs argue that tying the scope of relief to the only claim they pleaded "conflates the elements of liability with the scope of available remedies." Opp. 24. But that is exactly how injunctive relief works. Plaintiffs' citation to *Apple Inc. v. Psystar Corp.* is telling: there, the Ninth Circuit affirmed "entry of a permanent injunction against Psystar's infringement" in a case with an infringement claim, exactly what Plaintiffs did ***not*** bring here. *See* 658 F.3d 1150, 1162 (9th Cir. 2011). Moreover, the DMCA injunctive relief in *Psystar* required destruction of devices used for circumvention, not infringement. *Apple Inc. v. Psystar Corp.*, 673 F. Supp. 2d 943, 957 (N.D. Cal. 2009). Plaintiffs' gotcha cite only proves them wrong.

## II. CONCLUSION

For the foregoing reasons, Apple respectfully requests dismissal with prejudice.

DATED: September 9, 2026

Respectfully submitted,

*/s/ Dale M. Cendali*

Dale M. Cendali (SBN 1969070)
Joshua L. Simmons (*pro hac vice*)
Josh Berlowitz (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
dale.cendali@kirkland.com
joshua.simmons@kirkland.com
josh.berlowitz@kirkland.com

Andrew M. Gass (SBN 259694)
Joseph R. Wetzel (SBN 238008)
Melanie M. Blunschi (SBN 234264)
Nicole C. Valco (SBN 258506)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 391-0600
andrew.gass@lw.com
joe.wetzel@lw.com
melanie.blunschi@lw.com
nicole.valco@lw.com

Elana Nightingale Dawson (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
elana.nightingaledawson@lw.com

*Attorneys for Defendant*
*Apple Inc.*

**CERTIFICATE OF SERVICE**

On September 9, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all persons registered for ECF. All copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-1 have been so served.

*/s/ Dale M. Cendali*
Dale M. Cendali